UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

DAVID J. BLASKA,

    Plaintiff,

v.

CITY OF MADISON,

    Defendant.

## COMPLAINT

Plaintiff states as his complaint:

1. The City of Madison discriminates against individuals based on race.

2. In September 2020, Madison's Common Council passed a city ordinance, Madison General Ordinance § 5.20, that requires certain members of the City's Police Civilian Oversight Board to belong to the following specific racial groups: "African American," "Asian," "Latinx," and "Native American."

3. The Common Council then adopted a resolution making it the official City policy that the Police Civilian Oversight Board "shall be composed of at least 50% Black members."

4. The combined effect of the ordinance and official policy is that the City's eleven-member board must have at least six African-Americans, one Asian, one "Latinx," and one Native American. Individuals not in these racial groups (or

who do not identify with these racial categories) are ineligible for nine of the eleven voting seats on the City's Police Civilian Oversight Board.

5. The City's racial classifications—enshrined in City law and the official policy of the City—are unconstitutional, offensive, and repugnant to basic American values.

6. "At the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens as individuals, not as simply components of a racial [class]." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 730 (2007) (citation omitted). The City violated this "simple command" by imposing racial quotas upon the membership of the Police Civilian Oversight Board and then appointing members of the Board as provided in their unconstitutional ordinance and policy.

7. Plaintiff David J. Blaska is a resident of the City of Madison who applied for a position on the Board. He had all the qualifications necessary to be a member of the Board, but he was not selected. Because he is white, Plaintiff is ineligible for nine of the eleven Board positions.

8. Plaintiff seeks a declaration that the racial quotas contained in Madison General Ordinance § 5.20(3)(a)2.a., and the City's official policy requiring "50% Black members," are unconstitutional. The City should be enjoined from using these racial quotas and ordered to disband and reconstitute its Police Civilian Oversight Board without such unlawful criteria.

## PARTIES

9. Plaintiff David J. Blaska is an adult resident and taxpayer of the State of Wisconsin and the City of Madison. Plaintiff Blaska, who is white, applied for a position on the Police Civilian Oversight Board and was rejected.

10. Defendant City of Madison is a municipality in the State of Wisconsin with administrative offices at 210 Martin Luther King Jr. Blvd., Madison, WI 53703.

## JURISDICTION, AUTHORITY, AND VENUE

11. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

12. This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. § 2201 and 2202.

13. Venue is appropriate in this district under 28 U.S.C. § 1391.

## FACTS

14. On September 1, 2020, the Madison Common Council voted to establish a Police Civilian Oversight Board (the "Board"). An ordinance creating the Board was officially enacted and codified as Madison General Ordinance ("MGO") § 5.20 on September 16, 2020.

15. According to the ordinance, the purpose of the Board is "to provide within the City of Madison a body that is independent from the [Madison Police Department], authorized to hire and supervise the Independent Police Monitor, and

required to work collaboratively with the Office of the Independent Police Monitor, and the community to review and make recommendations regarding police discipline, use of force, and other policies and activities, including related to rules, hiring, training, community relations, and complaint processes." MGO § 5.20(2) (abbreviations deleted).

16. The Board "shall have eleven (11) voting members and two (2) alternate members." MGO § 5.20(3)(a)1.

17. Members of the Board are compensated by the City of Madison. MGO § 5.20(3)(a)5.

18. The ordinance mandates that the "Board's composition shall be diverse" and include at least one of each of the following racial groups: "African American," "Asian," "Latinx," and "Native American." MGO § 5.20(3)(a)2.a.

19. On September 1, 2020, the Madison Common Council passed Resolution 20-00631. Under this resolution, the Council adopted the "Final Report of the Alder Workgroup to Develop Logistics & Operational Details for Madison Police Department Independent Civilian Oversight" (hereafter "the Report"). The Council resolved that the Report's "policy recommendations are adopted as policy of the City, which the City and its agencies are expected to follow."

20. One of the policy recommendations adopted by the Madison Common Council was that "the Civilian Oversight Board shall be composed of at least 50% Black members."

21. Therefore, in addition to MGO § 5.20(3)(a)2.a.'s racial quotas, it is the policy of the City that the Board be "at least 50% Black."

22. Members of the Board are appointed and confirmed by the Mayor and the Common Council as provided in MGO § 5.20(3)(b).

23. On or about September 26, 2020, the City's mayor and its Common Council appointed members of the Board in compliance with racial quotas adopted in both MGO § 5.20(3)(a)2.a. and Resolution 20-00631.

24. On or about October 6, 2020, the City's Common Council confirmed members of the Board in compliance with racial quotas adopted in both MGO § 5.20(3)(a)2.a. and Resolution 20-00631.

25. On or about October 6th, 2020, the City used racial quotas in establishing members of the Board as provided by MGO § 5.20(3)(a)2.a. and Resolution 20-00631.

26. In 2020, the Board met on November 30 and December 7. In 2021, the Board met approximately 12 times and plans to meet two times a month for the foreseeable future.

### COUNT 1 – THE CITY'S ORDINANCE VIOLATES THE CONSTITUTIONAL GUARANTEE OF EQUAL PROTECTION
### Civil Rights Act of 1871, 42 U.S.C. § 1983

27. The Civil Rights Act of 1871, later codified as 42 U.S.C. § 1983 and interpreted by the U.S. Supreme Court, provides that cities "shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings" for the "deprivation of any rights, privileges, or immunities secured by the Constitution."

28. The United States Constitution's Fourteenth Amendment guarantees the right to "the equal protection of the laws." Under this guarantee, "any official action that treats a person differently on account of his race or ethnic origin is inherently suspect." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 310 (2013).

29. "A racial classification, regardless of purported motivation, is presumptively invalid and can be upheld only upon an extraordinary justification." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979).

30. When confronted with such a racial classification, "[a]ny person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny." *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 224 (1995). "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly tailored measures that further compelling governmental interests." *Johnson v. California*, 543 U.S. 499, 505 (2005) (citation omitted).

31. MGO § 5.20(3)(a)2.a. contains racial classifications requiring that membership of the Board "shall … include" "[a]t least one member" of four defined racial groups: "African American," "Asian," "Latinx," and "Native American.

32. Under this ordinance, individuals who are not members of these four racial groups are ineligible for these four race-based seats.

33. The City has enacted and implemented the racial classifications in MGO § 5.20(3)(a)2.a.

34. The City cannot establish a compelling government interest in imposing racial classifications upon the membership of the Board as provided by MGO § 5.20(3)(a)2.a.

35. The City cannot establish that the racial classifications in MGO § 5.20(3)(a)2.a. are narrowly tailored.

36. Plaintiff applied for a position on the Board. Because he was white, the City's ordinance, MGO § 5.20(3)(a)2.a. prohibited Plaintiff from being appointed to some seats on the Board. Plaintiff was not appointed to the Board.

### COUNT 2 – THE CITY'S RESOLUTION 20-00631 VIOLATES THE CONSTITUTIONAL GUARANTEE OF EQUAL PROTECTION
### Civil Rights Act of 1871, 42 U.S.C. § 1983

37. Resolution 20-00631 establishes racial classifications as the official policy of the City by requiring that "the Civilian Oversight Board shall be composed of at least 50% Black members."

38. As provided by Resolution 20-00631, non-Black individuals are ineligible to serve on six of the eleven voting seats of the Police Civilian Oversight Board.

39. The City has used the racial classifications imposed by Resolution 20-00631.

40. For all the reasons stated above, the City cannot establish a compelling government interest in imposing racial classifications upon the membership of the Board as provided by Resolution 20-00631.

41. The City cannot establish that the racial classifications in Resolution 20-00631 are narrowly tailored.

42. Plaintiff applied for a position on the Board. Because he was white, the City's Resolution 20-00631 prohibited Plaintiff from being appointed to some seats on the Board. Plaintiff was not appointed to the Board.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff request the following relief:

A. Declare that Madison General Ordinance, § 5.20(3)(a)2.a. is unconstitutional under the United States Constitution (Count 1).

B. Declare that Resolution 20-00631 is unconstitutional under the United States Constitution (Count 2).

C. Enjoin the City from using an applicant's membership in a racial group as a requirement for membership on the Board.

D. Order the City to disband the Board and reconstitute its membership without regard to any applicant's membership in a racial group.

E. Award Plaintiff any damages that he is entitled to under 42 U.S.C. § 1983, including nominal, compensatory, and punitive damages.

F. Award attorney fees, costs and any such other relief as the Court may deem appropriate.

Respectfully submitted June 30, 2021

        WISCONSIN INSTITUTE FOR LAW & LIBERTY, INC.
        Attorneys for Plaintiff
        Rick Esenberg
        (414) 727-6367
        rick@will-law.org

        /s/ Daniel P. Lennington
        Daniel P. Lennington
        330 E. Kilbourn, Suite 725
        Milwaukee, WI 53202-3141
        414-727-9455
        dan@will-law.org